**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

THE STATE OF MISSISSIPPI and
STACEY PICKERING in his capacity as Auditor
For the State of Mississippi                                      PLAINTIFFS

V.                                              CIVIL ACTION NO. 3:08-cv-61 HTW-LRA

THE LANGSTON LAW FIRM, P.A.,
JOSEPH C. LANGSTON, and TIMOTHY
R. BALDUCCI                                                      DEFENDANTS

## ORDER GRANTING REMAND

Before this court is a motion seeking remand filed by the plaintiffs in this action,

the State of Mississippi and Stacey Pickering in his capacity as Auditor for the State of

Mississippi (hereinafter collectively, "State Auditor").  This remand motion, calling upon

the reach of Title 28 U.S.C. § 1447(c),[1] aims to persuade this court to return this lawsuit

to the Circuit Court of Hinds County, Mississippi, where it was filed originally before

defendants herein, the Langston Law Firm, P.A., Joseph C. Langston, and Timothy R.

Balducci, invoked the procedural muscle of Title 28 U.S.C. §§ 1441[2] and 1446[3] to lift

---

[1]Title 28 U.S.C. § 1447(c) provides in relevant part that, "[a] motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after filing the notice of removal under section 1446(a).  If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. ..."

[2]Title 28 U.S.C. § 1441(a) states as follows: "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.  For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded."

[3]Title 28 U.S.C. § 1446(a) provides that, "[a] defendant or defendants desiring to remove any civil action ... from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to

this lawsuit from the aforementioned state court to this federal forum.  Their Notice of

Removal recites the following:

> A party may remove any claim or cause of action in a civil
> action other than a proceeding before the United States Tax
> Court or a civil action by a governmental unit to enforce such
> governmental unit's police or regulatory power, to the district
> court for the district where such civil action is pending, if such
> district court has jurisdiction of such claim or cause of action
> under section 1334 of this title.  28 U.S.C. § 1452.  District
> courts have original, non-exclusive jurisdiction of all civil
> proceedings arising under title 11, or arising in or related to
> cases under title 11.  28 U.S.C. § 1334.

Plaintiffs' motion to remand, in summary, criticizes defendants' removal on the

ground that the factual urgings of this lawsuit do not and cannot fit into either one of the

two statutory-blessed bases for removal – diversity of citizenship, Title 28 U.S.C.

§ 1332;[4] or federal question, Title 28 U.S.C. § 1331.[5]  Included within the embrace of

---

Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of
the grounds for removal, together with a copy of all process, pleadings and orders served on
such defendant or defendants in such action."

[4]Title 28 U.S.C. § 1332 provides in pertinent part:

(a)  The district courts shall have original jurisdiction of all civil actions where the
matter in controversy exceeds the sum or value of $75,000, exclusive of interest
and costs, and is between–

(1)  citizens of different States;  ...

[5]Title 28 U.S.C. § 1331 provides: "The district courts shall have original jurisdiction of all
civil cases arising under the Constitution, laws, or treaties of the United States."

§ 1331, bankruptcy removals are codified at Title 28 U.S.C. § 1334[6] and § 1452.[7]  As shown below, plaintiffs take strong exception to defendants' removal on this ground.

## **BACKGROUND**

Once in complaint form, this lawsuit gathered its first air of birth on December 20, 2007, when it was filed in the Circuit Court of Hinds County, Mississippi.  Suing the Langston Law Firm, P.A., Joseph C. Langston, and Timothy R. Balducci, the State Auditor, plaintiff, sought the return to the State of Mississippi of $14 million from the Langston Firm.  This sum of money had come to the Langston Firm directly from settlement proceeds in bankruptcy court paid by MCI WorldCom (now Verizon).  Earlier, MCI WorldCom had sought protection under Chapter 11[8] from creditors in a bankruptcy proceeding entitled In re WorldCom, Inc., et al., Case No. 02-13533 (AJG), filed in the United States Bankruptcy Court for the Southern District of New York.  Determined to see its tax claims ratified, the State of Mississippi had filed a claim in that bankruptcy proceeding.  Eventually, the matter was settled.  The State of Mississippi received $100,000,000.00 in settlement, and the Langston Law Firm, as the attorneys for Mississippi, were paid the 14 million dollars in attorney fees.

---

[6]Title 28 U.S.C. § 1334(a) provides:

(a)  Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

[7]Title 28 U.S.C. § 1452(a), provides that, "a party may remove any claim or cause of action in a civil action ... to the district court for the district where the civil action is pending, if such district court has jurisdiction ...  under section 1334."

[8]Chapter 11 contemplates rehabilitation of the debtor.  "Rehabilitation as used in 11 U.S.C. § 1112(b)(1) means to put back in good condition; re-establish on a firm, sound basis."  See Loop Corporation v. U.S. Trustee, 379 F.3d 511, 517 (8th Cir. 2004).

Whether the defendants herein are entitled to the 14 million dollars depends upon the juridical empowerment of the settlement agreement between MCI and the Attorney General for the State of Mississippi, Jim Hood, effective May 6, 2005.  Section 8(ii) of the settlement agreement provides for "settlement payment and releases" and states that MCI will pay on behalf of the State of Mississippi, "[f]ourteen million and 00/100 dollars ($14,000,000.00) in counsel fees and costs to Joseph C. Langston and Timothy R. Balducci of the Langston Law Firm, P.A., tax i.d. number 64-0867806, acting as Special Assistant Attorneys General for the State; ... ."

The Amended Complaint filed by the State Auditor in state court before the lawsuit's removal, claims that Miss. Code Ann. § 7-5-7[9] makes illegal the use of public

---

[9]Miss. Code Ann. § 7-5-7. Special counsel and investigators.

The governor may engage counsel to assist the attorney general in cases to which the state is a party when, in his opinion, the interest of the state requires it, subject to the action of the legislature in providing compensation for such services.

The attorney general is hereby authorized and empowered to appoint and employ special counsel, on a fee or salary basis, to assist the attorney general in the preparation for, prosecution, or defense of any litigation in the state or federal courts or before any federal commission or agency in which the state is a party or has an interest.

The attorney general may designate such special counsel as special assistant attorney general, and may pay such special counsel reasonable compensation to be agreed upon by the attorney general and such special counsel, in no event to exceed recognized bar rates for similar services.

The attorney general may also employ special investigators on a per diem or salary basis, to be agreed upon at the time of employment, for the purpose of interviewing witnesses, ascertaining facts, or rendering any other services that may be needed by the attorney general in the preparation for and prosecution of suits by or against the state of Mississippi, or in suits in which the attorney general is participating on account of same being of statewide interest.

The attorney general may pay travel and other expenses of employees and appointees made hereunder in the same manner and amount as authorized by law for the payment of travel and expenses of state employees and officials.

funds to pay attorneys retained as Special Assistants to the Attorney General except "out of the Attorney General's contingent fund, or any other funds appropriated to the Attorney General's office." The Complaint also asserts that Mississippi makes unlawful the spending of public funds except upon a two-thirds (2/3) vote of the Mississippi Legislature, citing Miss. Constitution, 1890 § 66.[10]

So, says the State Auditor, even though the defendants entered into a retention agreement with the Attorney General wherein they were designated Special Assistant Attorneys General to represent the State of Mississippi's interest in pursuing the tax claims, these defendants, in accepting this enormous fee directly from the MCI settlement proceeds,[11] indulged in conduct offensive to both the Mississippi Code and the Mississippi Constitution. Thus, on November 20, 2006, and March 12, 2007, the State Auditor demanded that the $14 million be paid to the State of Mississippi.

Predictably happy with the fee distribution, the defendants on September 21, 2007, filed an adversary proceeding in the Bankruptcy Court for the Southern District of New York, Case No. 07-02044-AJG, within the MCI bankruptcy proceeding. This adversary proceeding sought before the state lawsuit was filed by the State Auditor, but

---

The compensation of appointees and employees made hereunder shall be paid out of the attorney general's contingent fund, or out of any other funds appropriated to the attorney general's office.

[10]The Mississippi Constitution of 1890, § 66, states: "No law granting a donation or gratuity in favor of any person or object shall be enacted except by the concurrence of two-third of the members elect of each branch of the Legislature, nor by any vote for a sectarian purpose or use."

[11]The Settlement Agreement entered into on May 6, 2005, says that the $14 million would be paid one day after the effective date of the agreement. The agreement was approved by the New York Bankruptcy Court on May 13, 2005.

subsequent to the State Auditor's demands for the return of the $14 million, asks the New York Bankruptcy Judge to rule that the State Auditor is precluded by principles of estoppel and waiver from demanding return of the settlement proceeds. Defendants contend that the Bankruptcy Court has retained jurisdiction to effectuate its Order, and should be permitted to protect its Settlement Order from collateral attack.

On December 20, 2007, the State Auditor filed a motion for abstention in the New York Bankruptcy Court. This move calculated to freeze defendants' adversary proceeding so that this matter could be resolved through the lawsuit also filed December 20, 2007, in the Circuit Court of Hinds County, Mississippi, which is the instant case removed to this court.

The State Auditor argues to the New York Bankruptcy Court as follows: (1) the dispute is a non-core proceeding *between two non-debtor parties* from the State of Mississippi with respect to issues of Mississippi law; (2) the dispute presents no issues of bankruptcy law; and (3) the outcome will have no impact, positive, negative or otherwise, upon MCI, the reorganized Debtors' Chapter 11 cases, the administration thereof or the consummation of the joint plans thereunder.

A snapshot of the dispute between the parties relative to the $14 million dollars, at this point, portrayed two scenes – the on-going struggle in the New York Bankruptcy Court and the growing battle posed by the litigation in the Mississippi state court.

This chess match then saw another move. The Langston Defendants removed this action from state court to this federal forum under the purported authority of Title 28 U.S.C. §§ 1334 and 1452. According to the defendants, the central issue relative to the ownership of the $14 million is one the New York Bankruptcy Court should address.

6

The vehicle for transporting the issue there, say the Langston Defendants, is for this court to accept removal of the state lawsuit to this federal forum, then transfer the litigation to the United States District Court for the Southern District of New York, so that federal court could further transfer this case to the New York Bankruptcy Court.

The defendants Langston, Balducci and their law firm cite Title 28 U.S.C. § 1412[12] as authority for their motion to transfer this case to the Bankruptcy Court in New York.  Section 1412 allows a district court to "transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."

The defendants contend that a transfer of venue is necessary: (1) because it will serve the interests of justice; (2) because the State of Mississippi's lawsuit is a collateral attack on the settlement with MCI; (3) because federal law favors settlements; (4) because transfer will promote more efficient administration of MCI's bankruptcy estate; and (5) because the New York Bankruptcy Court has retained jurisdiction over the settlement agreement and should make any and all calls with regard to whether this matter is a core or non-core proceeding.

In its papers arguing for remand, the State of Mississippi, relying upon certain of the same arguments the State is simultaneously making in the New York Bankruptcy Court, says its abstention motion in the Bankruptcy Adversary Proceeding establishes

_____

[12]Title 28 U.S.C. § 1412 provides: "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."

7

all six requirements for mandatory abstention pursuant to Title 28 U.S.C. § 1334 (c)(2)[13] and easily meets the abstention and remand requirements under §1452(b).[14]  This dispute, says the State Auditor, is purely a matter of State law governed by the Mississippi Code and Constitution.  The $14 million, adds the State of Mississippi, to be legally paid to the defendants, necessarily must be paid from either the Attorney General's funds or by a  legislative appropriation, neither of which occurred.  So, under Miss. Code Ann. § 7-7-211(g), the State Auditor says he is obliged to investigate the management of these allegedly public funds to determine if they have been improperly withheld, misappropriated and/or otherwise illegally spent.  Hence, says the State Auditor, this matter should be remanded to state court where the question of the relationship between the defendants, who were designated Special Assistant Attorneys General, and the Attorney General who hired them, may be examined.

## APPLICABLE LAW

In circumstances where a party in a civil state court action has filed for relief from indebtedness in the federal bankruptcy court, a party to that litigation may seek to remove that civil action to that same bankruptcy court through the district court.  *Matter*

---

[13]Title 28 U.S.C. § 1334(c)(2) provides that, "[u]pon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction."

[14]Title 28 U.S.C. § 1452(b) provides that, "[t]he court to which such [bankruptcy] claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order entered under this subsection remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title [28 USCS § 158(d), 1291, or 1292] or by the Supreme Court of the United States under section 1254 of this title [28 USCS § 1254].

*of Texas General Petroleum Corp.*, 52 F.3d 1330, 1336 (5th Cir. 1995).  Title 28 U.S.C. § 1452(a), provides that, "a party may remove an action from state court to federal district court if the district court has jurisdiction under section 1334."  Section 1334 gives district courts jurisdiction over civil actions "arising under Title 11, or arising in or related to cases under Title 11." 28 U.S.C.A. § 1334(b).  The maxim that removal statutes are to be strictly construed, and any doubts concerning removal resolved against removal and in favor of remanding the case to state court, applies in the bankruptcy court. *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); *Blackmore v. Rock-Tenn Co. Mill Div., Inc.*, 756 F.Supp. 288, 289 (N.D.Tex. 1991);  *Luevano v. Dow Corning Corp.*, 183 B.R. 751, 752 (W.D. Tex. 1995).

Before this court may transfer venue to the applicable district court in New York, and from there to the Bankruptcy Court,[15] this court first must determine whether this case is one over which the New York Bankruptcy Court should preside.  The defendants urge this court so to find.  This court is not persuaded to do so.

Title 28 U.S.C. § 157(b)(1) provides that bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may

---

[15]Bankruptcy courts are courts of limited jurisdiction and their jurisdiction is "wholly 'grounded in and limited by statute.' " *See Bass v. Denney (In re Bass)*, 171 F.3d 1016, 1022 (5th Cir. 1999).  Even if this court were to determine that transfer to another district would be more convenient,  the court must still determine whether transfer would be in the interests of justice. *Frazier v. Commercial Credit Equipment Corp.*, 755 F.Supp. 163, 167 (S.D. Miss. 1991), citing *Ferens v. John Deere Co.*, 494 U.S. 516, 521-23, 110 S.Ct. 1274, 1279, 108 L.Ed.2d 443 (1990) (§ 1404(a) "permits a transfer only when convenient *and* 'in the interests of justice' ").  The "interests of justice" component of § 1404(a) may, in itself, be determinative of the decision to allow a transfer, even where the convenience of the parties and witnesses would call for a different result. Searcy v. Knostman, 155 B.R. 699, 708 (S.D. Miss. 1993), citing *Frazier*, 755 F.Supp. at 167.

enter appropriate orders and judgments, subject to review under section 158 of this title."  While Congress has not fully defined what constitutes "core" or "non-core" disputes, Title 28 U.S.C. § 157(b)(2) provides a non-exclusive listing of core proceedings, which includes the following:

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, ... .

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul, or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate;

(O) other proceedings affecting the liquidation of the assets of the estate or the

10

adjustment of the debtor-creditor or the equity security holder relationship, except

personal injury tort or wrongful death claims; and

    (P) recognition of foreign proceedings ... under chapter 15 of title 11.

***

    The United States Supreme Court, in *Northern Pipeline Construction Co. v.*

*Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), held that

(1), "bankruptcy judges may exercise full judicial power over only those controversies

that implicate the peculiar rights and powers of bankruptcy" and that (2), "controversies

that do not depend on the bankruptcy laws for their existence, that is, suits that could

proceed in another court even in the absence of bankruptcy, are not core proceedings."

Moreover, bankruptcy courts may not exercise original jurisdiction over adversary

proceedings that do not intimately involve the debtor-creditor relationship and rest

solely in issues of state law.  *Id.*, 458 U.S. at 84, 102 S.Ct. at 2878, 73 L.Ed.2d at 623;

*see also In re Wood*, 825 F.2d 90, 95-96 (5th Cir. 1987).

    The United States Court of Appeals for the Fifth Circuit has cautioned in its *In Re*

*Wood* opinion that the statutory listing, in particular § 157(b)(2)(O), should not be read

so broadly that the dictates *of Northern Pipeline Construction Co. v. Marathon Pipe Line*

*Co.*, would be violated.  *In Re Wood*, 825 F.2d at 95.  And, with regard to core matters,

the Fifth Circuit recognizes that a proceeding is core under § 157 if it invokes a

substantive right provided by title 11 of the United States Code or if it is a proceeding

that, by its nature, could arise *only in the context of a bankruptcy case*.  *In Re Wood,*

825 F.2d at 97;  *see also In re U.S. Brass Corporation*, 301 F.3d 296, 304 (5th Cir.

11

2002).

## <u>ANALYSIS</u>

The instant case, removed here by defendants from the Circuit Court for the First Judicial District of Hinds County, Mississippi, is not based on any right created by the federal bankruptcy law.  The State Auditor specifically refers to his obligations and duties under state law.  Moreover, this suit is not a proceeding that could arise only in the context of a bankruptcy.  It is, simply stated, an action to determine the authority of the Attorney General for the State of Mississippi under Mississippi law to enter into contracts with his choice of designated Special Assistant Attorneys General, where said contracts permit these designated Special Assistants to receive attorney fees from successful litigation, as would a private attorney for a non-governmental client, directly from the litigation, and not from funds held by the Attorney General and not pursuant to any action of the Mississippi Legislature.  Thus, were there no action in bankruptcy, this case still could proceed in state court based on issues wholly within the province of state law.

So, the essential issue in the state  court proceeding is whether the defendants are liable under state law to repay the $14 million dollars they received as Special Assistant Attorneys General.  The lawsuit does not affect such matters as dischargeability, allowance of a claim, or any other bankruptcy matters.  The $14 million fee, at this point, has no connection to the New York Bankruptcy.  The Bankruptcy Court approved the settlement and payment of these funds on May 13, 2005, over two years before the defendants in this case filed their Adversary Proceeding.  Nothing that happens to the $14 million affects MCI or the Bankruptcy Estate in any way.  The State

12

of Mississippi, in seeking this $14 million dollars, is making no claim against MCI or any of its successors in interest.

As noted by counsel for the State Auditor, what remains before the Bankruptcy Court in New York is administration under Chapter 11 which may be ongoing.  Counsel for the State Auditor also suggests that a Plan of Reorganization already has been accepted by the Court.  This court is not duly apprised on the record of the whole status of MCI's bankruptcy, but this is of no moment here.  If the New York Bankruptcy Court were to exercise adjudicatory jurisdiction as to any of the claims of the State Auditor, this court is persuaded that the dictates of *Marathon* would be violated, especially when the State Auditor's claims implicate no rights and powers of bankruptcy, do not depend upon the bankruptcy laws for their existence, and are claims that could proceed in state court even in the absence of bankruptcy.  All the State Auditor's claims relate to state-created law.  Indeed, the state court proceeding will not just be affected by state law, it will be dictated by the state court's interpretation of that law.  This will have no effect upon the Order of the Bankruptcy Court in New York.

## CONCLUSION

Therefore, based on the foregoing, this case is hereby remanded to the Circuit Court for the First Judicial District of Hinds County, Mississippi.

**SO ORDERED**, this the 11th day of June, 2008.

        **s/ HENRY T. WINGATE**
        **CHIEF UNITED STATES DISTRICT JUDGE**


CIVIL ACTION NO. 3:08-cv-61 HTW-LRA
Order Granting Remand

13